# Assigned estate of Winfield S. Love. Appeal of T. T. Shirk.

*Assignee's sale—Effect of lien creditor's agreement—Discharge of his lien—Junior judgments.*

It is a maxim that anyone may renounce the benefit of a privilege provided for himself.

A mortgage creditor whose mortgage is a lien prior to all others, except another mortgage, under an agreement with the assignee for creditors and a verbal notice given at the hour of the assignee's sale made under the order of court founded on the Act of February 17, 1876, P. L. 4, can agree that the lien of his mortgage shall be divested by the sale so that he may participate in the distribution of the fund realized from the sale to the exclusion of a subsequent judgment creditor who was present at the sale, heard the notice, made no protest at the time, participated in the sale as a bidder, and filed no exceptions to the return of sale made by the assignee.

What effect such sale would have upon the rights of judgment creditors, whose liens were divested thereby and who were not present and had no knowledge of the verbal notice given thereat, not considered.

Argued March 12, 1897. Appeal, No. 38, March T., 1897, by T. T. Shirk, from definitive decree of C. P. Blair Co., June T., 1896, No. 54, overruling exceptions to and confirming report of the auditor appointed to distribute funds in hands of the assignee for the benefit of creditors of Winfield S. Love. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exceptions to auditor's report. Before BELL, P. J.

Winfield S. Love executed a deed of assignment for creditors to C. O. Templeton on June 24, 1895. The only real estate passing by said assignment was an improved farm. At the date of sale there were due two mortgages, the liens of which were

prior to all other liens thereon: the first, in favor of James Love's executors, for $2,200 and the second, in favor of the citizens' B. & L. Assn., for the real debt of $1,200.

The assignee presented his petition for leave to sell under the Act of February 17, 1876, P. L. 4, discharged of liens. On October 12, 1895, after due advertisement and one adjournment the property was sold and bid in by the assignor for his wife for $1,020, subject to the payment of a first mortgage for $2,200, in favor of the executors of James Love. On October 30, the sale was confirmed absolutely.

The assignee filed his account showing a balance in his hands arising from the sale, of $900.50. No exceptions having been filed said account was confirmed absolutely. An auditor was appointed to distribute the balance in his hands. Before the auditor the fund was claimed by the Citizens' Building & Loan Association No. 2, a second mortgage creditor for $705, which claimed the right to participate in the distribution; and by T. T. Shirk, the appellant, a subsequent judgment creditor for $465.23 and by other judgment creditors who did not appeal.

At the sale of the property it appears that in accordance with the agreement made by the second mortgagee notice was given that the sale would be made discharged of the second mortgage by virtue of said agreement.

The appellant was present at the sale, heard the notice and was one of the bidders for the property. The auditor awarded the payment of the second mortgage as a prior lien on the fund, which distribution was confirmed by the court below.

*Errors assigned* among others were (1) In not awarding to T. T. Shirk the full amount of his judgment debt, interest and costs. (2) In awarding any portion of the fund realized from said sale to the Citizens' Building and Loan Association, No. 2, on its mortgage. (3) In overruling appellant's seventh exception, which exception is as follows: "7. In not finding that the lien of the mortgage of the Citizens' B. & L. Association No. 2, is prior to all other liens upon the real estate of the assignor, from the sale of which said fund was realized, except another mortgage due to the executors of James Love, deceased; and that the lien of said mortgage of the Citizens' B. &. L. Association No. 2, was not destroyed or in any way affected by the sale

made by C. O. Templeton, Esq., assignee, by virtue of an order of the court of common pleas of Blair county, made under the provisions of the act of assembly of February 17, 1876." (4) In overruling appellant's eighth exception, which exception is as follows : " In not finding that the proceeds arising from said sale can only be appropriated to liens extinguished by virtue thereof according to their priority; and that the lien of the mortgage of said Citizens' Building & Loan Association No. 2, was not extinguished by said sale."   (5) In confirming the report of the auditor absolutely.

*Stevens, Owens & Pascoe*, for appellant.—The Act of March 23, 1867, P. L. 43, forbids the court to discharge such a debt: Penn. Square Building Association's Appeal, 81* Pa. 330.

In Loomis's Appeal, BLACK, C. J., delivering the opinion of the court, after reviewing the authorities, says : " We cannot choose but hold, that while a contract may be made, at the time of the sale, in some sense legally binding upon those who make it, it can have no validity whatever against those who are not parties to it. To give it the effect of continuing a lien on the land, it must have the consent, not only of the purchaser, but of all the lien creditors : " Loomis's Appeal, 22 Pa. 312, 318.

The rights of the lien creditors junior to the mortgage were vested rights, and the sheriff could not divest them, either in whole or in part. The law gave them the entire fund raised by the sale, and without their consent no portion of it could be diverted to the payment of another class of creditors : Devine's Appeal, 30 Pa. 348, 351.

" We do not in the least mean to impugn the rule that, as a general thing, judicial sales discharge all liens which are not protected from discharge by law or their own nature : " THOMPSON, C. J., in Ashmead v. McArthur, 67 Pa. 326, 329.

Moreover, the rights of those claiming to participate in the proceeds of a sheriff's sale are to be determined by their status, as shown by the record at the time of sale. The rule is a presumption of law, not rebuttable ; and in case of its violation, the inference of injury to junior incumbrances, is drawn as a presumption juris et de jure, and the rule is a rule of policy in the interest of certainty in judicial sales : Coyle's App., 163 Pa. 222 ; Indiana Co. Bank's App., 95 Pa. 500.

As showing the inutility of a notice to change the status of creditors, fixed by the records: Coyne v. Souther, 61 Pa. 458, 459.

*Hicks & Templeton*, for appellee.—The assignee having full title to the land under his deed of assignment, and having obtained under the act of assembly an order of the court to sell the land clear of all incumbrances, except first mortgages, may he not by agreement and consent of the holders of such first mortgages and notice to all lien creditors and bidders sell the land for its full value free from all incumbrances for the benefit and advantage of the estate? Who can be injured by such an agreement and such a sale? Certainly no one.

The Supreme Court has frequently, for equitable reasons, enforced conditions annexed to sales made by a sheriff, who is a mere agent of the law, as is well shown by the opinion of the learned court below, citing Zeigler's Appeal, 35 Pa. 173; Crooks & Cooper v. Douglass, 56 Pa. 51; Ashmead v. McArthur, 67 Pa. 326; Tospon v. Sipe, 116 Pa. 588.

The lien creditors may, in advance of the sale, promise to release the land of their liens, in order that the full price may be obtained, in consideration of the assignee's undertaking that the money shall be applied to their liens in their order. A sale made in pursuance of this contract would discharge the land of the liens. The creditors would be obliged to look to the purchase money instead: Trickett on Assignments in Pa., sec. 122, and cases there cited.

OPINION BY BEAVER, J., April 19, 1897:

The appellant in his argument embodies the various assignments of error in this case in two questions. These can be combined in one and for the sake of clearness and fullness should have two or three additional facts added which are in no way disputed but are practically admitted. This is the question: Can a mortgage creditor whose mortgage is a lien prior to all others, except another mortgage, under an agreement with the assignee and a verbal notice given by the assignee at the hour of the assignee's sale made under an order of court founded on the act of February 17, 1876, agree that the lien of his mortgage would be divested by the sale, divest the lien

of his said mortgage, so that he may participate in the distribution of funds realized from said sale to the exclusion of a subsequent judgment creditor whose lien would be divested by said sale, and who was present at the sale, heard the notice given by the assignee, made no protest at the time, participated in the sale as a bidder, and filed no exceptions to the return of sale as made by the assignee?

The purposes of the Act of February 17, 1876, P. L. 4 are plainly apparent. They are, first, to enable an assignee for the benefit of creditors to make advantageous sales of real estate, that is, sales advantageous to the creditors for whom the assignee is trustee, and to this end to empower the courts of common pleas to direct the sales of real estate incumbered by liens freed therefrom ; and, second, to preserve the rights of mortgagees the lien of whose mortgages it is not necessary to divest, in order to make such a sale advantageously. The language of the act which relates to the preservation of the lien of first mortgages is as follows : " which sale or sales, after being confirmed by said court, shall discharge all liens against the real estate so sold, excepting that where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents and the purchase money due the commonwealth, the lien of such mortgages shall not be destroyed nor in any way affected by any sale made by virtue or authority of any sale made under the provisions of this act." It is very clear that the court of common pleas having jurisdiction of and control over assigned estates could not by an order of sale direct the divestiture of the lien of a mortgage which by the terms of the act above quoted is directed to be preserved, nor could the assignee make sale of real estate so ordered to be sold divesting such lien, without the express consent of the mortgagee. The provisions of the act which apply to such mortgages do not, however, tie the hands of the mortgagees. Such provisions are merely directory and not mandatory. They do not prevent and were not intended to prevent those who were to be benefited under the act from waiving or relinquishing the benefits thereby conferred. As was said by Mr. Chief Justice GIBSON in Berger v. Hiester, 6 Wharton, 210, " It is a maxim that anyone may renounce the benefit of a privilege provided for himself."

In the present case a Building & Loan Association was the holder of a second mortgage upon the premises about to be sold by the assignee. The amount due under the mortgage or which would necessarily be paid by the purchaser, if the lien of the mortgage remained, was uncertain. This uncertainty would necessarily deter bidders and prejudice the rights of creditors who were to share in the fund arising from the sale. It was therefore wise on the part of the assignee to secure, if possible, an agreement on the part of the holder of this mortgage that its lien should be divested. Such an agreement was secured. Announcement thereof was made at the sale. The appellant in this case, after the announcement was made, was a bidder. He made no protest at the time. He acquiesced in the sale and in the sufficiency of the price of the land sold by allowing the bidder next higher than himself to take the property. He made no complaint, when the return of sale was made by the assignee, and is not heard in derogation of the bona fides of the sale or of the sufficiency of the price of the property sold, until the proceeds thereof are brought into court for distribution, and even then his complaint is not that there was bad faith, not that the price is insufficient, but that the lien of the building association mortgage was not divested notwithstanding the agreement. In Burkholder's Appeal, 94 Pa. 522, Mr. Justice STERRETT delivering the opinion of the court says: "It has been definitively settled that by the final confirmation of a sale made by an assignee for the benefit of creditors under the act of February 17, 1876, the land is converted into money as of that date, and at the same time discharged from all such then existing liens as are intended to be divested by the sale, and that the liens so divested are to be paid out of the proceeds of sale according to their priority on the date of confirmation, with interest to that date." He does not say the liens divested under the provisions of the act referred to, but such liens as are intended to be divested by the sale. There is we think clear recognition of what has been the almost universal practice under the act of 1876 of the divestiture of the lien of the mortgage by consent of the mortgagee where such divestiture was for the benefit of the assigned estate. Under the peculiar circumstances of this case, we are clearly of the opinion that the assignee was enabled to make a more ad-

vantageous sale of the real estate sold by being able to announce that the lien of the mortgage held by the building association, uncertain in amount and uncertain also as to the number of payments and the duration of time within which such payments were to be made, would be divested by the sale than if the lien had been allowed to remain, as was possible under the provisions of the act of 1876, above referred to.   The appellant was in no way a sufferer.   He was represented at the sale.   He heard the notice.   He was a bidder and, if he had been a purchaser, would have been entitled, of course, to claim the benefit of the agreement made by the assignee and the mortgagee as to the divestiture of the lien of the building association mortgage. If for any reason he were dissatisfied with the terms of the sale, it was his duty to make his protest on the spot or at the time the assignee made his return.   The agreement between the assignee and the holder of the building association mortgage was undoubtedly valid and could be enforced: Loomis's Appeal, 22 Pa. 312.   It would be unfair, therefore, for the appellant charged with the knowledge of the facts to take the proceeds of the sale as against the holder of the building association mortgage and compel him to have recourse to the property which, in the hands of the purchaser at the assignee's sale was divested of the lien of the mortgage by the agreement of the mortgagee himself.

We are not called upon to consider what the effect of this sale upon the rights of judgment creditors, whose liens were divested thereby and who were not present and had no knowledge of the verbal notice given thereat, might be.   As to the present appellant, we are satisfied that the distribution made by the auditor and confirmed by the court below should stand.

The decree is, therefore, affirmed and the appeal dismissed at the costs of the appellant.