The Fidelity Title & Trust Company v. The Schenley Park & Highlands Railway Company, Appellant.

*Corporations—Mortgages—Railroads—Resolution of January 21, 1843.*

A mortgage given by a railroad company after debts to contractors and others had been incurred is only illegal and void under the joint resolution of January 21, 1843, P. L. 367, as against "such contractors, laborers and workmen." As between the parties to the mortgage and as against all other persons the mortgage is valid.

*Receivers—Sales—Corporation.*

Liens upon property held by a receiver are not divested by virtue of a sale made by him. If the order of sale make no mention of such prior lien or of incumbrances of any kind the sale passes the title in the prop-

erty as it is in the receiver, and subject to whatever incumbrances there may be existing upon it.

*Receivers—Sales — Corporations — Foreclosure—Equity—Jurisdiction — Acts of April* 11, 1862, *and March* 23, 1877.

In Pennsylvania, under the Acts of April 11, 1862, P. L. 477, and March 23, 1877, P. L. 32, the jurisdiction under which corporation mortgages are foreclosed, so as to sell the property and franchises of railroads and other designated corporations, is the general equity jurisdiction, and not the common-law jurisdiction of the courts. It therefore follows that in cases of sales by receivers the general equity rule that liens are not barred unless the holder has notice of the proceedings is in force.

Argued Nov. 2, 1898. Appeal, No. 67, Oct. T., 1898, by defendant, from judgment of C. P. No. 1, Allegheny County, Sept. T., 1896, No. 229, on verdict for plaintiff. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before STOWE, P. J.

At the trial the following facts appeared:

The Squirrel Hill Railroad Company was organized under the general railroad act of 1868 and it commenced the construction of the road in 1889. On December 10, 1889, when the work was under way, and when contractors' claims were unpaid, the company executed a mortgage upon the roadbed, franchises, etc., to the Fidelity Title & Trust Company, trustee, to secure the payment of fifty bonds of $1,000 each. Only six of these bonds were issued, and they were issued January 4, 1890, to the Gilbert Car Manufacturing Company, and afterwards became the property of one H. S. Hale, for whose benefit this suit is brought. On June 17, 1890, when the construction of the road was almost completed, a bill was filed against the railroad company, upon which one James Binney was appointed receiver of the company. August 30, 1890, a rule was granted on the railroad company and the creditors thereof to show cause why the corporate rights, franchises, choses in action, rights of way, agreements and all and singular the property and roadbed of the Squirrel Hill Railroad Company should not be sold, and September 6, 1890, the following order was made:

" It appearing to the court that due notice of the rule granted August 30, 1890, in this matter, and made returnable this day, was served upon the Squirrel Hill Railroad Company and upon the principal creditors thereof, and it further appearing that no

objections to said rule have been offered, etc., it is ordered, etc., that the receiver shall expose to sale and sell to the highest and best bidder, etc., the following described property, viz: All the roadbed of the Squirrel Hill Railroad Company, extending from its terminus, etc., a distance of $3\frac{1}{2}$ miles; also its sidings, culverts, embankments, trestles, bridges, masonry, timber, iron rails, ties and all and singular the material and property of said company on the line of its road or elsewhere; also all its rights of way, contracts and agreements; also all its choses and rights of action; also all its corporate rights, privileges and franchises."

Under this order of sale the road, etc., was sold to Thomas A. Noble for $9,600.

The Fidelity Title & Trust Company never had notice of the proceeding which resulted in the appointment of the receiver and sale of the road until several years after the sale had taken place, and the owner of the bonds was not a party to the proceeding, so neither he nor any one representing him or the trustee in the mortgage, had any notice of the proceeding or sale, except a notice that the sale had been confirmed nisi and would become absolute in ten days, to wit:

"MARTIN G. FRANK ET AL. \
        VS. \
GEORGE W. MORRIS ET AL. ⎬ No. 483, July Term, 1890. \
  & THE SQUIRREL HILL \
  R. R. Co.

" Parties in interest will please take notice that on November 29, 1890, the receiver in above case made return of sale of the Squirrel Hill Railroad Company, which said sale was confirmed to become absolute unless objections were filed thereto in 10 days from the date of the return thereof.

                " J. L. McCUTCHEON,
          " Attorney for James Binney, Receiver.

which was accepted as follows, inter alia:
                " EDWIN W. SMITH,
         " Atty. for G. Car Manufacturing Co."

A verdict was taken by the agreement of counsel for plaintiff in $7,975.95, subject to the opinion of the court as to whether the plaintiff was entitled to recover under the undisputed facts.

The court subsequently in an opinion by Stowe, P. J., directed that judgment should be entered for the plaintiff on the verdict. Defendant appealed.

*Error assigned* was the order of the court.

*John F. Sanderson* and *W. F. McCook,* with them *Hays & Noble,* for appellant.—The liens of the contractors were superior to that of the plaintiff's mortgage which was void as to them: Resolution of January 21, 1843, P. L. 367 ; Fox v. Seal, 22 Wall. 424; Shamokin Valley, etc., R. R. v. Malone, 85 Pa. 25.

The sale upon the contractor's lien passed the estate to which it attached : Coulter v. Philips, 20 Pa. 154 ; McCormick v. McMurtrie, 4 Watts, 192; Fehley v. Barr, 66 Pa. 196.

It is immaterial whether the mortgagee was a party to the proceedings of sale or not : Goepp v. Gartiser, 35 Pa. 130 ; Parrish's App., 83 Pa. 111; Shamokin Valley, etc., R. R. v. Malone, 85 Pa. 25.

The presumed intention of the order of sale was a sale discharged of all liens : Zeigler's App., 35 Pa. 173 ; Girard v. McDermott, 5 S. & R. 128; Moore v. Shultz, 13 Pa. 98.

*W. H. McClung,* with him *S. Blaine Ewing* and *E. W. Smith,* for appellee.—The mortgage was a valid lien : Fox v. Seal, 22 Wallace, 424 ; Shamokin R. R. v. Malone, 85 Pa. 35.

The receiver's sale made without notice either to the mortgagee or to the holder of the bonds, and without any decree, or proceeding disclosing an intention to disturb the lien of the mortgage, did not discharge the lien of the mortgage : Beach on Receivers, sec. 732 ; High on Receivers, sec. 199 ; Gluck and Becker on Receivers, 115 ; Story's Equity Pleading (10th ed.), sec. 193 ; Jones on Corporate Bonds and Mortgages, sec. 401 ; Ensworth v. Lambert, 4 Johnson's Ch. 606 ; Gould v. Wheeler, 28 N. J. Eq. 541 ; Howard v. Ry. Co., 101 U. S. 848 ; Snow v. Winslow, 54 Iowa, 200.

Judicial sales of the franchises and property of a railroad company are not governed by the rules applicable to judicial sales of real estate : Com. v. Gurney, 14 S. & R. 257 ; Keen v. Swaine, 3 Yeates, 564; Ammant v. Turnpike Road, 13 S. & R. 210 ; Susquehanna Canal Co. v. Bonham, 9 W. & S. 27 ; Com.

v. Susquehanna, etc., R. R., 122 Pa. 320; Jones on Mortgages, sec. 152–161; Bayard's App., 72 Pa. 453; McElrath v. R. R., 55 Pa. 203; Com. v. R. R., 122 Pa. 306.

OPINION BY MR. JUSTICE GREEN, January 3, 1899:

This proceeding is a sci. fa. on a mortgage given by the Squirrel Hill R. R. Co. to secure the payment of fifty bonds of $1,000 each, of which only six thousand were issued. These bonds were issued to the Gilbert Car Mfg. Co. who transferred them to H. S. Hale, for whose benefit the present suit was brought by the Fidelity Title and Trust Co. The bonds were issued on January 4, 1890. Afterwards, in June, 1890, when the road was nearly finished, a bill was filed against the Squirrel Hill R. R. Co. by certain creditors of the company, the object of which was to stay proceedings in execution upon a judgment obtained against the railroad company by certain other creditors. On June 21, 1890, an injunction was granted against the proceedings on the judgment and a receiver was appointed to take possession of the railroad and all the property and franchises of the company and proceed to manage the same according to law. Later, on August 11, 1890, a receiver's petition was presented in court, setting forth that the road was nearly completed and that it would require only a small expenditure of about $5,000 to finish, and asking for power to issue receiver's certificates for this purpose. This authority was granted. On September 6, 1890, an order was granted to the receiver to sell the road and property and franchises of the company at public sale on September 27, 1890. A second order of sale was granted subsequently to sell the property and franchises on November 2, 1890, and to that order the receiver made return on November 29, 1890, that he had sold the property to one Noble for $9,600. After the sale a new company was organized upon the basis of the property purchased, called the Schenley Park and Highlands Ry. Co., and that company is the defendant in the present action.

The learned court below distinctly found as a fact, and it is not controverted, that "the Fidelity Title and Trust Co. never had notice of the proceedings which resulted in the appointment of the receiver and sale of the road until several years after the sale had taken place, and the owner of the bonds was

not a party to the proceeding, so neither he nor any one representing him or the trustee in the mortgage had any notice of the proceeding or sale, except a notice that the sale had been confirmed nisi and would become absolute in ten days."

It was also admitted on the trial "that neither in the petition for the sale, the order of the court authorizing the sale, nor in the order confirming the sale, is there any reference made to the existence or divestiture of this mortgage, nor is there anything upon the record to indicate any intention or purpose to disturb the lien of said mortgage by the receiver's sale aforesaid."

It was contended for the defendant that the mortgage to the plaintiff was given after debts to contractors and others had been incurred, and it was therefore illegal and void under the joint resolution of January 21, 1843, P. L. 367, P. & L. Dig. 3962. But the terms of that resolution only make void such a mortgage as against "any such contractors, laborers and workmen creditors as aforesaid," and not absolutely void as to all persons. It was expressly decided by this Court in Shamokin, etc., R. R. Co. v. Malone, 85 Pa. 25, that the object of the resolution was simply to give a priority of claim over the mortgage to the contractors and others. SHARSWOOD, J., delivering the opinion quotes the language of Justice STRONG in Fox v. Seal, 22 Wall. 424, with reference to this resolution as follows : " The language of the resolution is too clear to admit of question, that the legislature intended to give an unpaid contractor a priority of claim to the company's property, over every right that might be acquired by a mortgagee, or acquired under a mortgage, if the mortgage was made after the debt to the contractor was made." It would follow from this that as between the parties to the mortgage, and as against all other persons the mortgage is valid. So far as the claims of contractors prior to the mortgage are concerned it would occupy the relation of a junior lien.

This being so, it is necessary to consider the question raised by the contention that the receiver's sale will not divest the lien of the mortgage in cases where no notice has been given to the mortgagee or the holder of the bonds which it was given to secure, of the application for the order to sell. The rule on this subject is very familiar, and is without question. In Beach on Receivers, sec. 732, it is thus stated : " Liens upon property held

by a receiver are not divested by virtue of a sale made by him. If the order of sale make no mention of such prior lien or of encumbrances of any kind, the sale passes the title in the property as it is in the receiver, and subject to whatever encumbrances there may be existing upon it." In High on Receivers, sec. 199 *a*, it is said : " A sale of a receiver under an order of court which makes no mention of prior liens or encumbrances operates as a transfer of title to the purchaser subject to the lien of whatever encumbrances may be outstanding."

In Gluck and Becker on Receivers, p. 115, the rule is thus stated : " A sale by a receiver . . . . under an order directing a sale by public auction without any mention of prior liens or encumbrances will transfer the property to the purchaser subject to whatever encumbrances may be upon it with the right of the purchaser, nevertheless, to contest the validity of apparent encumbrances, either with respect to their legal existence or the amount due upon them."

The jurisdiction to appoint receivers and to order sales by them of the property and franchises of corporations resides in courts of equity, and is conducted according to the principles of equity practice. That practice is well expressed in Story's Equity Pleading (10th ed.), sec. 193, thus : " All persons whose interests are to be affected or concluded ought to be made parties . . . . if indeed any encumbrancers, whether prior or subsequent, are not made parties, a decree of foreclosure does not bind them, as, also, a decree of sale would not. The prior encumbrancers are not bound, because their rights are paramount to those of the foreclosing party. The subsequent encumbrancers are not bound, because their interests would otherwise be concluded without any opportunity to assert or protect them." In Jones on Corporate Bonds and Mortgages, sec. 401, it is said : " If a subsequent mortgage creditor is not made a party to the foreclosure of a prior mortgage his mortgage is not affected by the sale. He may redeem at any time." In Snow v. Winslow, 54 Iowa, 200, the plaintiff Snow had a statutory lien on a railroad which went into the hands of a receiver. The receiver was authorized to issue receiver's certificates for the purpose of raising money to complete the road. After the road had been completed proceedings to foreclose the certificates were instituted, and a decree entered declaring them to be a first lien, and that

the road should be sold for their payment. Winslow became the purchaser at the sale. Snow, who had not been made a party to the proceedings, afterwards instituted proceedings to collect his lien, which was junior to the lien of the certificates upon which the road had been sold to Winslow. Held that Snow's lien was not divested by the sale. In Howard v. Ry. Co., 101 U. S. 848, 849, it is said: "Subsequent encumbrancers when not made parties to a bill to foreclose are not bound by the decree. . . . Whatever rights the plaintiff (a subsequent) encumbrancer had prior to a sale in equity, he still has them wholly unimpeached by that sale or by any other cause, unless they are barred by lapse of time or laches. . . . It by no means follows that the decree of sale is void because a second encumbrancer is not made a party to the foreclosure, as it is clear that his lien stands in full force, notwithstanding the decree of sale entered pursuant to such proceeding."

It thus appears that the general practice in equity in cases of foreclosure is that liens are not barred unless the holder has notice of the proceeding. This proposition is also true in cases of sales by receivers, and this appears to be the law in the federal courts and, generally, in the courts of the other states. Does this rule prevail in Pennsylvania in cases of similar sales, or sales under proceedings to foreclose? It must be conceded of course that in Pennsylvania, in all ordinary sales of real estate by force of judicial proceedings, all liens are divested except first mortgages under the acts of 1830 and 1867. But the franchises of a corporation are not real estate, and when these were in the hands of receivers a different system became applicable to their treatment when general equity powers were conferred upon our common pleas courts. Prior to that time the lien creditor had a remedy by sequestration under the execution act of 1836, sections 72 to 75, but that did not confer a power of sale. The supplemental act of 1870 authorized a sale on the second fi. fa., but that made provision for unsecured creditors only. The sale did not discharge liens, but simply brought the corporation into liquidation for the benefit of all unsecured creditors: Bayard's App., 72 Pa. 453. In the mean time the Act of April 11, 1862, P. L. 477, was passed, providing "that the Supreme Court of this commonwealth shall have and exercise all the powers and jurisdiction of a court of chancery in

all cases of mortgages given by corporations," and this was held by this Court to authorize the foreclosure of a railroad mortgage by plenary bill: McElrath v. Pittsburg & Steub. R. R. Co., 55 Pa. 203. This jurisdiction was afterwards extended to the courts of common pleas by the act of May 1, 1876, so far as it relates to mortgages given by railroad, canal and navigation companies, and by the act of March 23, 1877, so far as concerns mortgages given by other designated corporations: 1 Purd. Dig. 781, pl. 35 and 38. It will thus be seen that the jurisdiction under which corporation mortgages are foreclosed, so as to sell the property and franchises of railroad and other designated corporations, is the general equity jurisdiction, and not the common-law jurisdiction of the courts. It follows hence that the rules and practice which prevail in equity in this class of cases are now the rules and practice which prevail in Pennsylvania, and under the decisions cited supra, the plaintiff's lien was not divested by the receiver's sale. That being so, the judgment of the court below was correct.

Judgment affirmed.